action upon a contract made in this state in violation of the provisions of the section. It is the making of the contract until permission is obtained that is prohibited, as well as maintaining an action in the courts of this state upon such contract.

Nor can it be said that a contract to manufacture and erect elevators in a building situated in this state for the use of the building is interstate commerce and under the exclusive control of the federal government. If the contract related solely to the manufacture of these elevators and delivering them in the state of New York, a different question would be presented; but here the plaintiff was not only to manufacture elevators as articles of commerce, and deliver them here, but was also to install them in the building, and it was for the manufacture and installation as completed elevators that the plaintiff contracted, and which completion of the contract it alleges as its cause of action, for which it is entitled to recover.

The contract of guaranty by the defendant Hall was to guarantee the performance of the original contract with the defendant corporation, and, having been also made within this state, the same rule applicable to the contract with the corporation applies to the contract of the individual.

For the error above indicated, however, the judgment must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

In re TERMINAL RY. OF BUFFALO.

Appeal of TOWN OF CHEEKTOWAGA.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

1. RAILROADS—CROSSINGS—STATUTES—CONSTRUCTION.

Railroad Law, Laws 1897, p. 794, c. 754, § 60, providing that all surface railroads, "except additional switches and sidings," must be so constructed as to avoid grade crossings where practicable, confers on the board of railroad commissioners authority to eliminate grade crossings, and also to determine how sidings or switches shall be taken over a highway, where a railroad concedes that the board may deal with them; the quoted words being an exception available to a railroad seeking the benefit of the statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 298.]

2. SAME.

Railroad Law, Laws 1897, p. 796, c. 754, § 62, authorizing an application to the board of railroad commissioners for alterations in grade crossings, approaches thereto, location of highways, closing of highway crossings, etc., gives to the board jurisdiction to determine in what manner crossings shall be made, to close a highway and divert the travel thereof to another highway, and to change the grade thereof, subject only to review by the appellate court and the Court of Appeals.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 298.]

3. SAME.

Where parallel streets extend across railroad tracks, and the crossing is dangerous, the board of railroad commissioners must decide how many viaducts shall be constructed, and determine that the traffic on certain streets shall be diverted into such viaducts, especially where the railroad

company will pay the expenses of the construction of the viaducts and the damages resulting to property owners.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Railroads, § 298.]

Kruse, J., dissenting.

Appeal from Special Term, Erie County.

Petition by the Terminal Railway of Buffalo, under Railroad Law, Laws 1897, pp. 794, 796, c. 754, §§ 60, 62, for the establishment of highway crossings in the town of Cheektowaga. From the determination of the board of railroad commissioners, the town appeals. Affirmed.

The proceeding was instituted by the petitioner, the Terminal Railway of Buffalo, on or about the 30th day of November, 1906, by filing its petition with the board of railroad commissioners, in which it was alleged in substance that the petitioner is a steam surface railroad corporation, organized and existing under the laws of the state of New York, with a double-track railroad extending from the village of Depew to the village of Blasdell, all within the county of Erie; that the petitioner intends and is now engaged in building extensive railroad yards in the towns of Cheektowaga and West Seneca, in such county, and has acquired and is acquiring large tracts of land for that purpose; that the Rowly road, the Lawson road, the Union road, and the French road are highways situated in said town, and all cross the tracks of the petitioner's railroad at grade. It is alleged that public safety requires an alteration in the manner of said crossings, their approaches, the method of crossing, a relocation of the highways across the tracks of the petitioner, the discontinuance of the Union and the French roads, and the diversion of travel thereon to another highway to be opened; that it will be necessary to the proper completion of such yards to lay many more additional tracks across said highways, which will render such crossings still more dangerous. It is also alleged that, to enable the petitioner to construct said yards, it is necessary that it shall have the permission of the board of railroad commissioners to construct and lay six additional standard-guage railroad tracks over said highways at grade. The petitioner then prays that the board of railroad commissioners determine: (1) That public safety demands a change in the existing crossings; (2) in what manner said changes shall be made; (3) that the crossings of the Union and French roads be closed and discontinued, and a new highway be opened to take the travel thereof over the tracks of petitioner, in such manner as may seem best; (4) that the petitioner is entitled to immediately lay six additional standard-gauge tracks across said highways at grade.

As a part of such petition the petitioner filed with the board of railroad commissioners a map, showing the location of said crossings as now existing, the proposed new highway to take the place of the Union and French roads, and of said railroad tracks and yards. The board of railroad commissioners duly served notice of the filing of said petition upon the town of Cheektowaga, and gave notice that a public hearing on the petition would be held by the board in the city of New York on the 12th day of December, 1906. At such hearing the town duly appeared and raised preliminary objections, in substance that the board of railroad commissioners did not have jurisdiction to grant the prayer of the petitioner, and that such application is not a proceeding under section 62 of the railroad law (Laws 1897, p. 796, c. 754) to compel the separation of the grades at the several crossings, but is in fact an attempt to compel the state and town to contribute toward the expense of building viaducts over the portion of the proposed yards of the petitioner, and that it is the convenience of the company, and not public safety, that requires a change of the manner in which said highways shall be crossed by the tracks of said company; also it was objected that the board of railroad commissioners has no power under the law to compel the diversion of the highways from their present course to accommodate the convenience of the petitioner, and that, the crossings being already made at grade by two tracks, this com-

mission has not jurisdiction to determine any other question than whether the highways should be carried over the tracks or under the tracks. It was also objected that the use of the tracks proposed to be laid is for yard purposes only, and that the board of railroad commissioners is not vested by law with power to determine how highways in a town shall be crossed by railroad tracks intended for use for yard purposes, and practically that such question can only be determined by the town board. The town of Cheektowaga also filed an answer, in which it practically denied all the allegations in the petition, reiterated the preliminary objections, and in effect alleged that the change of crossings proposed by the petitioner was not such as would fairly serve the interests of the town or of the traveling public. The preliminary objections were overruled, and after extended hearings, at which evidence was given covering nearly 300 pages of the record, the board of railroad commissioners determined in effect that the crossings as outlined by the maps filed with and made a part of the petition should be authorized, but upon condition, however, that the railroad company should pay all the expenses thereof; the railroad company having filed a stipulation agreeing so to do.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

John W. Fisher, for appellant.
Charles A. Pooley, for respondent.

McLENNAN, P. J. Two questions are presented by this appeal: First, did the board of railroad commissioners have jurisdiction and authority to make the determination appealed from? And, second, if it had such jurisdiction, did it properly exercise its discretion in the premises?

The question of jurisdiction must depend upon the meaning and interpretation which should be given to sections 60 and 62 of the railroad law (Laws 1897, pp. 794, 796, c. 754). So far as it is important to note, section 60 provides:

"All steam surface railroads hereafter built, except additional switches and sidings, must be so constructed as to avoid all public crossings at grade wherever practicable so to do."

We think this provision of the statute cannot be and ought not to be construed to mean that the board of railroad commissioners may not determine how or in what manner "additional switches and sidings" may be taken over a highway, when the railroad company asks for such a determination. It would seem clear that the exception, "additional switches and sidings," was made in favor of the railroad corporation, and that, when such exception was waived by them, no other party interested could object how the same should be located or constructed as to a highway crossing. It seems to me evident that the purpose of section 60 is to confer upon the board of railroad commissioners authority to eliminate steam railroad crossings at grade, and that such power includes the elimination of sidings or switches, especially where the railroad company concedes that the board of railroad commissioners has or may have jurisdiction to deal with such situation. In other words, we think the words in the statute, "except additional switches and sidings," refer to an exception which is available only to the railroad company seeking the benefits of the provision of the statute.

106 N.Y.S.—42

Section 62 of the railroad law is very broad and comprehensive. It provides, in substance, that any town within which a street is crossed by a steam surface railroad at grade, or any railroad corporation crossing such street, may make application to the board of railroad commissioners for an alteration in such crossing, its approaches, the method of crossing, the location of the highway or crossing, the closing and discontinuance of a highway crossing, and the diversion of the travel thereof to another highway or crossing, etc., practically giving to the board of railroad commissioners in the first instance complete jurisdiction to determine how and in what manner the situation existing should be met, to the end that the interests of the public might be conserved in the premises. We can conceive of no broader power that could be delegated to a governmental agency than that which is delegated to the board of railroad commissioners under section 62 of the railroad law, in so far as it is sought to regulate the manner in which grade crossings of railroad tracks by highways may be eliminated and the methods employed to effect such result. By the language of the section the board of railroad commissioners has the right to close a highway, to divert its travel to another highway, to change the grade of either, to carry either over or under the railroad, and, so far as we can discover, by the language of the act is given absolute power in the premises, subject only to review by the appellate court and by the Court of Appeals.

In the case at bar we think the board of railroad commissioners had ample power and authority to make the determination which it did, that it had the authority upon the facts alleged in the petition to say that a certain highway should be discontinued, and that the traffic upon it should be diverted to another highway which such commission determined should be carried over all the tracks of the petitioner by means of a viaduct. It would seem absurd to hold that if two, three, or four streets, parallel to each other, extended across a number of railroad tracks, any and all of which were dangerous to public safety, under the law the board of railroad commissioners must decide that in order to avoid such dangerous situation a viaduct must be constructed over the tracks of such railroad in line with each of such highways. We think the reasonable construction is that the board of railroad commissioners has jurisdiction to determine how many of such viaducts should be constructed, and that the traffic upon the other streets should be diverted into such viaducts or means of crossing the railroad tracks, especially when, as in this case, it is stipulated that the railroad company shall pay all expenses of construction because of such change and also the damages resulting therefrom to any property owners, if any.

The manner of crossing petitioner's railroad tracks by the highways involved, the width of the viaduct, and the closing of other streets, were all matters properly within the discretion of the board of railroad commissioners, upon all the evidence disclosed by the record, and no situation or circumstance has been pointed out by the able argument of the appellant which leads us to the conclusion that the discretion exercised by the board of railroad commissioners, as evidenced by its determination, is contrary to or against the weight of the evidence, and for that reason should be reversed by this court. The situation

was a complicated one. Clearly it was a situation which was danger-ous to the public and to public travel. So far as we can discover, the solution arrived at by the board of railroad commissioners was, all things considered, the best which could have been devised; that at least it cannot be said that there was any abuse of discretion in the premises.

We conclude that the determination and order appealed from should in all things be affirmed, but without costs to either party.

Determination of the board of railroad commissioners affirmed, with-out costs. All concur, except KRUSE, J., who dissents.