PEOPLE ex rel. TOWN OF WEST SENECA v. PUBLIC SERVICE COM-MISSION FOR SECOND DISTRICT et al.

(Supreme Court, Appellate Division, Third Department. January 22, 1909.)

1. RAILROADS (§ 97*)—PUBLIC SERVICE COMMISSIONS—AUTHORITY.

Under Public Service Commissions Law (Laws 1907, p. 936, c. 429) § 80, abolishing the board of railroad commissioners, and conferring their powers upon the Public Service Commission, and under section 85 (page 937), providing that any proceeding commenced before such board before the taking effect of the law may be conducted to a final determination by the proper Public Service Commission, the Public Service Commissions can do whatever under the grade crossing provisions of Railroad Law (Laws 1897, p. 794, c. 754) § 60 et seq., the board of railroad commissioners might have done, regardless of whether the subject-matter of their proposed action was pending undetermined before the board, and, if the board could have reheard such proceeding and made another decision, the commission can do so.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 97.*]

2. RAILROADS (§ 97*) — RAILROAD COMMISSIONERS—AUTHORITY—GRADE CROSS-ING—PROCEEDINGS.

The board of railroad commissioners now abolished had jurisdiction to rehear and determine a matter heard and determined by it under the grade crossing provisions of Railroad Law (Laws 1897, p. 794, c. 754) § 60 et seq., with due regard to the rights of all parties; no inference of a lack of such power being deducible from the fact that Public Service Commissions Law (Laws 1907, p. 902, c. 429) § 22, expressly gives the board's successor power to grant rehearing while the board was not expressly authorized to do so.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 97.*]

3. RAILROADS (§ 97*) — GRADE CROSSING PROCEEDINGS — PUBLIC SERVICE COM-MISSION—REHEARINGS.

That a decision of the board of railroad commissioners in a matter un-der the grade crossing provisions of Railroad Law (Laws 1897, p. 794, c. 754) § 60 et seq., was approved on appeal, does not prevent its successor, the Public Service Commission, from granting a rehearing.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 97.*]

Appeal from Special Term.

Motion by the People, on the relation of the Town of West Seneca, for a writ of prohibition against the Public Service Commission for the Second District of the State and another. From a final order of the Supreme Court denying the motion and dismissing an alternative writ, relator appeals. Affirmed.

On November 30, 1906, the respondent the Terminal Railway of Buffalo, a steam surface railroad operating a double-track road through the town of West Seneca, the appellant herein in Erie county, presented to the board of railroad commissioners a petition alleging: That it was building extensive railroad yards in said town; that its tracks were crossed at grade by Clinton street and Mineral Springs road, two highways of said town; that public safety required an alteration in the method of said crossings, their approaches,

---

and the location thereof; that for the purpose of the yard of petitioner then under construction it would be necessary to lay more tracks across said highway, thus creating an additional reason why such crossings should be changed. The petitioner demanded a decision that public safety required a change in the existing crossings, as to the manner in which such change should be made, and that the petitioner was entitled to immediately lay four additional standard guage tracks across said highways at grade.

On April 30, 1907, hearings having been had on said petition under sections 60 and 62 of the Railroad Law (Laws 1897, pp. 794, 796, c. 754), the board of railroad commissioners made a decision that four additional tracks of the Terminal Railway of Buffalo should immediately cross Clinton street and the Mineral Springs road highways in said town. It also further determined as follows: "That the Clinton street highway grade crossing of the Terminal Railway of Buffalo in the town of West Seneca, Erie county, shall be changed to an overhead bridge crossing of said railway to be situated at the present location of the crossing; that said overhead bridge shall be of steel, of a width of 30 feet for roadway and have a 5-foot sidewalk on brackets, and be of a length to span the entire right of way of said railway; that the floor of said overhead bridge shall be of asphalt; that the approaches to said overhead bridge shall be on a grade not greater than 4 per cent., and shall be of a width of 35 feet, including roadway and sidewalk; that said approaches shall be paved with brick; that said overhead bridge shall be of sufficient strength to carry a street surface railroad car weighing 50 tons loaded; that the Terminal Railway of Buffalo shall maintain the roadway and sidewalk on the said overhead bridge and said approaches thereto, irrespective of the provisions of section 64 of the railroad law; that the Terminal Railway of Buffalo shall pay all damages lawfully due adjoining property owners where the approaches to said overhead bridges are erected in front of private property." A similar determination was made as to the Mineral Springs road highway, and the order also contained this provision: "This board also hereby determines, under section 65 of the railroad law, that none of the costs of the work or expenses or claims connected therewith under this determination shall be borne by the state or by the town of West Seneca, Erie county."

The town of West Seneca, feeling aggrieved by such decision, appealed therefrom to the Appellate Division, Fourth Department, where the decision was affirmed (Matter of Terminal Ry. of Buffalo, 122 App. Div. 896, 106 N. Y. Supp. 659), and to the Court of Appeals with like result (192 N. Y. ——, 84 N. E. 1121). The railroad company appeared on said appeals in support of the decision of the railroad commissioners. Pending such appeals, and on June 24, 1907, the Terminal Railway Company filed with the board of railroad commissioners another petition setting forth the proceedings previously had, stating that it was necessary for the purposes of its yard construction that it should have six instead of four additional tracks crossing said highways, alleging facts which it was claimed demonstrated that the viaduct provided for by the previous decision should be changed in size, character of structure, and carrying capacity, and that the petitioner should be relieved from a portion of the burden of building and maintaining said viaduct as required by the former decision. Such petition concluded as follows: "Wherefore your petitioner prays that your honorable board shall appoint a time and place for a rehearing, and that said board shall determine: (1) That your petitioner shall have the right to construct and maintain immediately at grade six additional tracks across Clinton street in the town of West Seneca, instead of four as granted by your determination of April 30, 1907; (2) that said determination of this board be modified by providing that the structures shall be of a character to maintain a load of 30 tons; (3) that the said determination shall be so modified as to change the width of the structures exclusive of said walk from 30 to 24 feet; (4) that the said determination shall be so modified as to provide that the roadways and approaches shall be maintained pursuant to the statute governing the maintenance of highways of the towns; (5) that the said determination of this board be modified so as to provide for such roadways upon said viaducts shall be of first-class planking, and that the approaches shall be constructed of a character similar to the adjoining and connecting roadways."

On June 28, 1907, a hearing was had on said last-mentioned application by the board of railroad commissioners, at which hearing the relator appeared and objected to any action being taken. Counsel were heard at length concerning the matter, but no conclusion was reached by the board of railroad commissioners or disposition made of the pending application. Three days thereafter, and on July 1, 1907, the public service commissions law (Laws 1907, p. 889, c. 429) became effective, and thereby the board of railroad commissioners was abolished and the Public Service Commissions came into existence.

On July 17, 1907, the Public Service Commission of the Second District took up the matter of the Terminal Railway's application for a rehearing before the former board of railroad commissioners. The relator appeared in objection thereto. Extensive arguments were had, and the matter was held in abeyance until June 29, 1908, when the Public Service Commission announced its position in reference to the matter as follows: "Resolved: That a hearing be had at the office of this commission in the city of Buffalo, on the 29th day of June, 1908, upon the application of the Terminal Railway of Buffalo, relative to the order of the former board of railroad commissioners, dated April 30, 1907, concerning the highway crossings of said railway at the Mineral Spring road and Clinton street highway crossings in the town of West Seneca, Erie county. That upon such hearing the commission will take under consideration and receive evidence upon the following matters: (1) The proper construction of the roadway of the steel viaducts directed by said order; (2) the clear width of the roadways upon such viaducts; (3) whether the viaducts upon the Clinton street highway shall be of sufficient strength and capacity to support a 50-ton loaded trolley car; (4) whether the provisions of said order that the Terminal Railway of Buffalo shall maintain the roadway and sidewalk on the said viaducts or bridges irrespective of the provisions of section 64 of the railroad law, is a lawful provision. That copies of this resolution be served by the secretary forthwith upon said railway company and upon all other parties interested."

Thereupon the relator procured an alternative writ of prohibition restraining the respondents from further proceeding in the matter prior to the return to said writ, and on such return the court at Special Term denied the application for an absolute writ and vacated the alternative writ theretofore granted. From such order of the Special Term, the relator appeals.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

William J. Evans and William Brennan, Jr., for appellant.

Ledyard P. Hale, for respondent Public Service Commission of the Second District.

Charles A. Pooley, for respondent Terminal Railway of Buffalo.

COCHRANE, J. The question is as to the jurisdiction of the Public Service Commission to rehear and redetermine a matter heard and determined by the board of railroad commissioners, under the grade crossing provisions of Railroad Law (Laws 1897, p. 794, c. 754) § 60 et seq. Section 80 of the Public Service Commissions Law is as follows:

"On and after the taking effect of this act the board of railroad commissioners shall be abolished. All the powers and duties of such board conferred and imposed by any statute of this state shall thereupon be exercised and performed by the Public Service Commissions."

The grade crossing provisions of the railroad law, under which the proceedings before the railroad commissioners were had which resulted in their decision of April 30, 1907, are left unrepealed, except that by said section 80 of the Public Service Commissions Law (Laws

1907, p. 936, c. 429), said board of railroad commissioners is abolished, but the powers and duties conferred on said board are to be exercised and performed by the Public Service Commissions.

Section 85 of the Public Service Commissions Law provides:

"Any investigation, examination or proceeding undertaken, commenced or instituted by the said boards or commission or either of them (which includes the board of railroad commissioners) prior to the taking effect of this act may be conducted and continued to a final determination by the proper Public Service Commission in the same manner under the same terms and conditions, and with the same effect as though such boards or commission had not been abolished."

There seems to be no doubt therefore but that the Public Service Commissions have full power and jurisdiction to do whatever under the grade crossing provisions of the railroad law the former board of railroad commissioners might have done, and it is immaterial whether or not the subject-matter of their proposed action was pending undetermined before the board of railroad commissioners. If the latter board being in existence would have jurisdiction to rehear the proceeding instituted by the Terminal Railway Company and make another decision in respect thereto, the Public Service Commission, under the statutes referred to, possess like jurisdiction. This requires us to consider the jurisdiction of the board of railroad commissioners to rehear the controversy.

The Public Service Commission does not propose to arbitrarily modify or change the decision of the board which preceded it, but to rehear the matter ab initio in certain specified particulars on new evidence, and thereby arrive at an independent result. The application of the Terminal Railway Company to the former board of railroad commissioners was for a "rehearing" of the matter decided by said board. The purpose of the Public Service Commission, as evidenced by its disposition of that application, and as announced by it, is to "receive evidence" on matters included within the decision of the board of railroad commissioners.

As to the power of the board of railroad commissioners to reinvestigate and hear and decide again on new testimony matters once decided by such board concerning grade crossings and the elimination thereof, we think, from an examination of the grade crossing provisions of the railroad law, and from the nature of the duties and responsibilities of such board, that such power existed, and in the nature of things must have existed. There is more reason why such board should have had great latitude in respect to such matters than is usually exercised in the courts concerning ordinary controversies between individuals. The board of railroad commissioners was clothed with grave responsibilities, wide discretion, and comprehensive supervisory powers in respect to grade crossings, and the elimination thereof not merely with reference to private rights and interests, but also with reference to the public safety, convenience, and utility. Such board was concerned with matters of public policy and interest. It not only determined as to the plan and project of the enterprise, but it was expressly provided in the statute that the work should be performed "subject to the supervision of and approval of the board of railroad

commissioners." Plans and specifications were required to be submitted to it for its approval before letting any contract. The proposals of contractors might be rejected by the board. It was authorized to employ experts and engineers in the supervision and accomplishment of the work.

It may properly be said that the work was planned, designed, and executed under the authority and supervision of the board. It is true that many of these matters related to details of construction, and it is doubtless true that the board of public service commissioners in the present instance contemplates a reinvestigation to a certain extent which involves the substance or essence of the decision which has been made and which goes to the foundation of such decision; but when it is considered that the board was responsible not only for details of construction but for the existence of the project relating as it did to matters of public safety and convenience and to so many widely diversified interests, and that it had plenary and comprehensive powers in reference to such project from its inception, there can be little doubt but that the statutes by clear implication conferred on the board the power to change its own plans and decisions whether relating to substance or detail. The board could not foresee and anticipate every emergency which might present itself or make proper provision for conditions which might arise in the future. Judicial and administrative powers and duties are so closely interwoven in such cases that it is sometimes difficult to draw the line of demarcation. It was evidently the purpose of the statute to surround and clothe the board with continuing powers and duties, and to give it the right to change its decisions in respect to all matters involved, whether of substance or detail, whenever experience, observation, or subsequent information should demonstrate their unwisdom. Such power was necessary in the interests of municipalities no less than in the interests of railroad companies.

Suppose it had become apparent, after the decision in question, that the viaduct would be too small for necessary traffic, or that it would be unsafe for public use, does the relator claim that the board of railroad commissioners would have been powerless to correct this mistake simply because it had already decided that public use and public safety would be properly subserved by a smaller or a weaker structure? In the present instance, it is claimed by the Terminal Railway Company that the decision as made requires an unnecessary expenditure of approximately half a million dollars without any corresponding benefit to the municipalities affected. The Public Service Commission proposes to investigate this allegation and to receive evidence in reference thereto, and, should the claim be well founded, there would be a strange remissness in the statutes if the board was without power to grant relief. The policy of the state was to vest extensive powers in the board of railroad commissioners in reference to these matters, and, if such board was without power to reconsider a matter simply because it had once reached a conclusion in reference thereto, its usefulness must have been seriously hampered, and the policy of the law largely thwarted.

It is true that section 22 of the Public Service Commissions Law expressly provides for a rehearing in respect to any determination, and such express power was not in terms conferred on the former board of railroad commissioners; but the public service commissioners have conferred upon them the powers and duties of several boards and in respect to manifold matters other than grade crossings, and no inference can therefore be drawn from the provisions of said section 22 that the board of railroad commissioners could not have granted the rehearing in question. We think the power of the board of railroad commissioners to change its decisions in reference to matters pertaining to grade crossings after further investigation was clearly implied from the provisions of the statutes having in view the nature and character of the duties such board was required to perform. Undoubtedly it was necessary that such change should be effected with due regard to the rights of all parties, and in such a manner as to conserve such rights; but we think the power clearly existed, and that the board of public service commissioners now succeeds to such power, and that in the proper exercise thereof it should not be interrupted.

The appellant places particular emphasis on the fact that the decision of the board of railroad commissioners safely ran the gauntlet of the appellate courts. All that the appellate courts held in reference to such decision was that the railroad commissioners had power to make the same, and that as against the appeal of the appellant there was no improper exercise of such power. That is apparent from the opinion in the case of Matter of the Terminal Railway of Buffalo, 122 App. Div. 59, 106 N. Y. Supp. 655, which was a companion case to the present one, and on which opinion the appeal of the appellant herein in the Appellate Division was determined. It was decided merely that the appellant had no cause for complaint. It does not follow that, if the decision had been more favorable to the railway company, such decision would not likewise have been affirmed. The courts in these cases are accustomed to leave very much to the discretion and wisdom of the commissioners and to permit a wide latitude in the exercise thereof. The affirmances by the courts were based on the former evidence, and, if on a subsequent investigation it should appear that some other disposition of the matter is more just and appropriate for all interests concerned, the former action of the appellate courts presents no obstacle.

The point is strenuously urged by the respondents that by this writ of prohibition the appellant has mistaken its remedy. We have preferred to treat the matter as properly before us that we might dispose of the case on its merits.

The final order should be affirmed, with costs. All concur.