THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK FIRE INSURANCE EXCHANGE, Relator, *v.* JESSE S. PHILLIPS, as Superintendent of Insurance of the State of New York, Respondent. WILLIAM F. CONRAN, Intervenor. (Proceeding No. 1.)

THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK FIRE INSURANCE EXCHANGE, Relator, *v.* JESSE S. PHILLIPS, as Superintendent of Insurance of the State of New York, Respondent. WILLIAM F. CONRAN, Intervenor. (Proceeding No. 2.)

Third Department. September 27, 1922.

Insurance — fire insurance — Insurance Law, § 141, gives Superintendent of Insurance jurisdiction to determine for himself whether rate is discriminatory — determination by Superintendent that Conran sprinkler head was just as effective as sprinkler systems for which lower rate was allowed confirmed — Superintendent has implied power under statute to grant rehearing after making such determination although certiorari proceeding pending to review same — determination denying application for, rehearing annulled.

Section 141 of the Insurance Law gives the Superintendent of Insurance jurisdiction to hear evidence and determine for himself whether a fire insurance rate fixed by a rate-making association is discriminatory. Accordingly, a determination by such officer, made after a hearing at which the rate-making association was represented, that the Conran sprinkler head was just as effective as the sprinkler systems for which said association allowed a reduced rate, will be confirmed, where upon the record produced it cannot be said that any error was committed on the hearing or that the determination was against the weight of evidence. (KILEY, J., dissents, with opinion.)

Under said statute, the Superintendent of Insurance has the implied power to grant a rehearing after making a determination as to discriminatory rates, although a certiorari proceeding is pending to review such determination. Hence, a determination by such officer denying an application for a rehearing on the question of such discrimination will be annulled.

CERTIORARI in proceeding No. 1, issued out of the Supreme Court and attested on the 17th day of March, 1920, directed to Jesse S. Phillips, as Superintendent of Insurance of the State of New York, commanding him to certify and return to the office of the clerk of the county of New York all and singular his proceedings had resulting in an order made by him on the 19th day of January, 1920, directing the removal of an unfair discrimination existing

14  PEOPLE EX REL. N. Y. F. INS. EXCH. *v.* PHILLIPS.  NOS. 1 & 2.

Third Department, September, 1922.  [Vol. 203

by reason of the failure of the relator to allow a credit in the rating of risks equipped with Conran automatic sprinklers.

Certiorari in proceeding No. 2, issued out of the Supreme Court and attested on the 21st day of May, 1920, directed to Jesse S. Phillips, as Superintendent of Insurance of the State of New York, commanding him to certify and return to the office of the clerk of the county of New York all and singular his proceedings had resulting in an order made by him on the 18th day of May, 1920, denying an application of the relator for a rehearing on the question of the discrimination above mentioned.

*Davies, Auerbach & Cornell* [*Charles H. Tuttle, Joseph S. Auerbach* and *Martin A. Schenck* of counsel], for the relator.

*Charles D. Newton, Attorney-General* [*C. T. Dawes, Deputy Attorney-General,* of counsel], for the respondent.

*Joseph F. Conran* [*Andrew F. Van Thun, Jr.,* of counsel], for the intervenor.

HINMAN, J.:

This is certiorari to review respectively the determinations of the State Superintendent of Insurance (1) in ordering the New York Fire Insurance Exchange to remove an unfair discrimination in rates against buildings equipped with a fire prevention device known as the Conran sprinkler head, and (2) in refusing, after hearings and a determination that such discrimination existed, to reopen the proceeding, on the ground that he was without power to reopen it when once determined and on the further ground that certiorari was pending at the instance of the said exchange, ordering him to return all proceedings to the court for review.

The New York Fire Insurance Exchange is a rate-making association maintaining an office in New York city, which has been authorized under the Insurance Law to make rates to be used by fire insurance underwriters. To correct discrimination in the fixing of such rates by such associations, the Insurance Law, section 141, provides suitable power in the Superintendent of Insurance to entertain complaints and after a full hearing to order its removal.

The important part of section 141 of the Insurance Law, so far as the question of discrimination is concerned, is that no such rate-making association shall fix any fire insurance rate " which discriminates unfairly between risks in the application of like charges or credits or which discriminates unfairly between risks of essentially the same hazards and having substantially the same degree of protection against fire. Whenever it is made to appear to the satisfaction of the Superintendent of Insurance *that such discrimination*

*exists*, he may, after a full hearing  *  *  *  order such discrimination removed." (Insurance Law, § 141, added by Laws of 1911, chap. 460, as amd. by Laws of 1912, chap. 175, and Laws of 1913, chap. 26; since amd. by Laws of 1922, chap. 660.)

The relator has a testing agency known as its " Chicago Laboratories " where tests are made of fire protection devices for the purpose of assisting it in fixing rates without unfairly discriminating between various devices. Application was made to the relator for credit in the rating of certain risks equipped with the so-called " Conran Sprinkler Head," an invention of the intervenor. It was claimed that the Conran device was just as effective as the sprinkler systems for which the relator allowed a reduced rate. The relator refused to grant this reduced rating on the ground that the Conran sprinkler had not been submitted to or approved by the " Chicago Laboratories." The intervenor, having had his apparatus subjected to extensive tests and approved by the board of standards and appeals of the city of New York, the body which approves the installation of all fire apparatus in buildings within that city, and by others, complained to the Superintendent of Insurance that a discrimination against his device existed in the fixing of rates. The matter was finally brought to hearing and determination, the Superintendent of Insurance holding, in effect, that the determining issue was whether or not the Conran device was just as effective as the sprinkler systems for which the exchange had allowed a reduced rate. He found that it was and ordered the removal of the discrimination.

It is the contention of the relator that the Superintendent of Insurance misconstrued the statute and usurped a power not given him by law; that the real issue before him under the statute was not whether the Conran device was just as effective as the systems recognized by the relator but whether the relator had acted unfairly; and that there was no evidence that the exchange was guilty of any unfair discrimination in insisting upon its uniform rule that any applicant for a reduced rate must submit his device to be tested for the enlightenment of the judgment of the relator.

We cannot agree with the relator as to its interpretation of the statute. The jurisdiction conferred upon the Superintendent of Insurance to act in such a case does not involve a determination as to the fairness of the relator's rules for the government of its own conduct or the wisdom of enlightening its own judgment by utilizing a competent laboratory. While a rate-making association may make rules governing the making of its own determinations, the statute does not condition the jurisdiction of the Superintendent of Insurance to determine the existence of a discrimination upon

a showing of unfair discrimination by the rate-making association in its manner of handling an application made to it. It is not a question of discriminatory conduct in methods of procedure before the rate-making association which is to be passed upon by the Superintendent of Insurance. It is not the rate-making association that is on trial before such Superintendent, but it is the device itself. It is a question of result and not of procedure. The question before the Superintendent is whether there is substantially the same fire hazard with this particular device used to equip a building as compared with the use of the other devices that have been recognized by the association in fixing the rate. The Superintendent of Insurance is not made a reviewing officer to review the proceeding had before the Fire Insurance Exchange involving this particular device, but he is given jurisdiction to hear the application *de novo* and to determine for himself whether the rate fixed in its relation to certain devices is in fact discriminatory as against the device in question, whatever may have been the reason for the denial of the same rate to the latter by the rate-making association.

The relator was notified by the Superintendent of Insurance of the complaint of discrimination six months before the hearing and was asked to state its position. He also requested information from numerous sources, including various officials dealing with fire control and of the National Board of Fire Underwriters. The relator had ample notice of the hearings and was there represented, with full knowledge of the issue as conceived by the Superintendent of Insurance and with full opportunity to present proofs such as it is now seeking to present upon a rehearing or to request such adjournment as would permit it to make the tests required by its own rules. Upon the record produced, we cannot say that the Superintendent of Insurance committed any error or that his determination should be set aside as against the weight of evidence.

The remaining question is as to whether or not the Superintendent of Insurance had power to reopen the proceeding and grant a rehearing, particularly in view of the pendency of the certiorari proceeding to review his determination and under which he had been required to return all proceedings in relation to such determination to the court for review. The Insurance Law does not expressly grant a power to rehear but we think it must be implied from the nature of the power granted and the grave consequences that might follow if a decision once made were to be considered beyond recall even though experience and the advances of science should demonstrate that discrimination had not in fact existed or that relative values had changed so as to create a new discrimination by virtue of the Superintendent's own order. We cannot

believe that the Legislature intended any such rigid or discriminatory result. The intention was to make the Superintendent a regulating officer, clothed with power to make and change his decisions and orders whenever it is made to appear to his satisfaction that discrimination exists. We have held that the power thus conferred was a power to compare one device with another for the purpose of preventing actual discrimination in result. The purpose of the statute is clear and it should be liberally interpreted to accomplish that purpose. So interpreted it is inconceivable that the Superintendent should be deemed powerless to act when it appears to his satisfaction that his own decision has created the very kind of discrimination sought to be avoided by the statute.

Our attention has not been called to any decision or statute preventing the Superintendent from entertaining an application for a rehearing during the pendency of a certiorari proceeding to review his determination. Such matters are susceptible of adjustment if the Superintendent is willing to grant the rehearing. The proceeding can be quashed by consent of the parties at any time and it is not reasonable to expect the relator to destroy its existing right to a review before it has had assurances that a rehearing will be granted. The Superintendent had a right to refuse a rehearing until after the decision in certiorari but he did not determine against a rehearing on that ground. He refused to act solely upon an assumed lack of power. In this he was in error.

The determination of the Superintendent in the first proceeding should be confirmed but in the second proceeding his determination should be annulled, without costs to either party in either proceeding.

In the first proceeding: All concur, except COCHRANE, P. J., not voting, and KILEY, J., dissenting, with an opinion.

In the second proceeding: H. T. KELLOGG and VAN KIRK, JJ., concur; KILEY, J., concurs in result, with an opinion; COCHRANE, P. J., not voting.

KILEY, J.:

This proceeding involves two orders representing determinations made by the Superintendent of Insurance of the State of New York. The same subject-matter is presented for consideration in the two proceedings argued together upon this appeal. The powers of the relator under the statute and also the powers of the Superintendent under the statute, over this relator so far as it affects its operation in the field of endeavor contemplated by its creation, are the questions presented. The relator is a rate-making association and so recognized by section 141 of the Insurance Law. Its

2

**18** People ex rel. N. Y. F. Ins. Exch. *v.* Phillips. **Nos. 1 & 2.**

Third Department, September, 1922. [Vol. 203

province, so far as this proceeding is concerned, is to make tests and examinations of devices used and intended to be used in reducing the hazard of damage caused by fire, and thus reducing the rates the insured shall be required to pay for insurance. The assumption is, and I believe the fact is, that on a certificate from the rate-making association (relator) that a device is practical and effective in the reduction of the hazard, the insurance companies will reduce their rates within the division where the association operates. Under section 2 of the Insurance Law (as amd. by Laws of 1912, chap. 265) the Superintendent of Insurance is given power to execute the laws relating to insurance. Under section 139 of the Insurance Law (as added by Laws of 1913, chap. 23) the Superintendent of Insurance is clothed with the powers and there is imposed upon him the duty of visitation over all associations, bureaus, boards or bodies for testing appliances, formulating rules or establishing standards affecting the business of insurance companies and their relation to the public constituting the insured. Section 140 of the Insurance Law (as added by Laws of 1913, chap. 21) is practically to the same effect, but relates to organizations for assisting in establishing insurance rates. By section 141 of the Insurance Law (added by Laws of 1911, chap. 460, as amd. by Laws of 1912, chap. 175, and Laws of 1913, chap. 26; since amd. by Laws of 1922, chap. 660) the relator is subject to examination by the said Superintendent, and its operations come under his supervisory jurisdiction. The provision of said section under which this proceeding was had is as follows: " No such person, corporation, association or bureau shall fix or make any rate or schedule of rates which is to or may apply to any risk within this State, on the condition that the whole amount of insurance on such risk or any specified part thereof shall be placed at such rates, or with the members of or subscribers to such rating organization; nor shall any such person, corporation, association or bureau, or any person, association or corporation authorized to transact the business of insurance within this State, fix or make any rate or schedule of rates or charge a rate which discriminates unfairly between risks within this State of essentially the same hazard or, if such rate be a fire insurance rate, which discriminates unfairly between risks in the application of like charges or credits or which discriminates unfairly between risks of essentially the same hazards and having substantially the same degree of pro- tection against fire. Whenever it is made to appear to the satisfaction of the Superintendent of Insurance that such discrimination exists, he may, after a full hearing either before himself or before any salaried employee of the Insurance Department whose

report he may adopt, order such discrimination removed." The relator makes use of an association known as the " Chicago Laboratories" in testing parts of the different devices brought out to reduce fire hazard; it maintains a branch of such laboratories in New York city, within the territory where relator operates. The intervenor, William F. Conran, previous to any time pertinent to these proceedings, invented a rotating sprinkling head. It is something new in sprinkling heads, in that it rotates upon an axis when the water is discharged. It is of complicated mechanism, and of many parts; perfect adjustment of these parts must obtain or it will fail to fulfill its purpose. Some time previous to January, 1920, Conran made application to this relator for a certificate showing and allowing buildings equipped with his sprinklers to be entitled to and should be allowed the same reduction in rates for insurance upon said buildings as if equipped with the standard sprinklers which had passed tests and proved their value and efficacy in reducing fire hazards. He was informed by relator that the association would have to test his sprinkling head before it could know whether it merited the favor asked for, and he was advised of the process. That the " strut," its manner of release in the head under heat from fire, and the formation of the different parts involving this revolving principle, as well as the distribution of water by the rotary movement within the head, would all call for careful investigation, and if he would submit his device it would be tested and passed upon by the association. The relator has the right to make rules governing such tests. Conran claimed that a demonstration had been made by different bodies connected with fire boards and public safety in the city of New York and that they said it would do, and he refused to submit his device for a test, especially objecting to the " Chicago Laboratories." He complained to the respondent, the Superintendent of Insurance, that he and his device were being discriminated against by relator and that by reason thereof he could not obtain the credit in rate making that demonstrations made before other bodies showed he was entitled to. It may be well here to point out the difference between a demonstration such as was reported to the Superintendent, and a test. The demonstration, as used by the intervenor, was attaching the head, all assembled, to a pipe or hose and letting the water on; it worked in most cases; in some cases it did not work; but the fact is that the component parts were all assembled; the mechanism of the different parts might be such that they might not co-ordinate under all conditions; there is no chance in such a demonstration to determine the mechanical relation of one part to the other — while a test contemplates the consideration

**20**   People ex rel. N. Y. F. Ins. Exch. *v.* Phillips.   Nos. 1 & 2.

Third Department, September, 1922.          [Vol. 203

by competent mechanical engineers, men who can say whether the principle of the thing is scientific; who are able to say if the different parts will function properly; and who will, with that knowledge, submit the different parts, and the whole device, to a scientific test under the varying conditions that obtain at a fire. It was necessary to test this device as to its fire-extinguishing properties, and, as well, as to the damage it would do by releasing a great amount of water. This test Conran refused to permit. The Superintendent entertained the complaint and by letter notified relator that it had been made; some evidence (so called) was taken, most of it hearsay and incompetent in any other legal proceeding. Relator was represented and took part. Most of the time the proceeding was taken up with discussion. The Superintendent found that there was unfair discrimination. That finding was made on the record designated as No. 2 on this appeal. Relator asked for a rehearing; the Superintendent denied the application upon the ground that he had no authority to grant a rehearing, basing his decision on the authority of *People ex rel. Chase* v. *Wemple* (144 N. Y. 478); *People ex rel. Spencerian Pen Co.* v. *Kelsey* (105 App. Div. 132) and cases cited. The relator contends that the following authorities authorized the granting of its application: *People ex rel. Finnegan* v. *McBride* (226 N. Y. 252); *City of New York* v. *Citizens Water Supply Co.* (199 App. Div. 169); *Matter of Equitable Trust Co.* v. *Hamilton* (226 N. Y. 241); *People ex rel. Hotchkiss* v. *Supervisors* (65 id. 222); *People ex rel. Town of West Seneca* v. *Public Service Commission* (130 App. Div. 335). This last case was in this court, where it was held that the Public Service Commission had power to grant a rehearing, even where a previous board had made the decision. Notwithstanding the apparent confusion and conflict of authorities, it is unthinkable that the appellate court cannot review the decision of a State officer when occasion requires it. It can. The writ in proceeding No. 2 should be sustained, with fifty dollars costs, and the order refusing a rehearing reversed. The other order sought to be reviewed, by a separate writ of certiorari, is the one holding that there was " unfair discrimination " on the part of relator, and directing the relator to remove it. Discrimination, as used here and as applied to this relator, could only be practiced in one of two ways: *First.* After a test made relator might unfairly find that the intervenor's device was not equal as a reducing element in fire hazard to some other device used for like purposes. *Second.* It might refuse to make the test. It did not default in either of these particulars; it was ordered to remove an " unfair discrimination " it never imposed. Ordered in effect to certify to the efficiency of a device

it had not been permitted to test. I have heretofore briefly reviewed the evidence and non-evidence produced and do not deem it necessary to repeat it here. This writ should be sustained, with fifty dollars costs, and the order of the Superintendent reversed.

In the first proceeding: Determination confirmed, without costs.

In the second proceeding: Determination annulled, and matter remitted to the Superintendent of Insurance, without costs.