ROBERT M. YAMADA and EMMA M. YAMADA,
Appellants *v.* NATURAL DISASTER CLAIMS
COMMISSION FOR THE COUNTY OF HAWAII
FOR THE VOLCANIC ERUPTION OF
1960 and THE TSUNAMI OF 1960, Appellee.

## No. 5223

AUGUST 24, 1973

RICHARDSON, C.J., MARUMOTO AND LEVINSON, JJ.,
CIRCUIT JUDGE VITOUSEK IN PLACE OF ABE, J.,
DISQUALIFIED, AND CIRCUIT JUDGE KAWAKAMI
IN PLACE OF KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY LEVINSON, J.

This dispute is the culmination of years of administrative wrangling over the value of property losses suffered by the appellants as a result of natural disasters and, as such, it presents us with a case of first impression regarding the power of an administrative commission to initiate reconsideration of its prior decisions.

The facts are as follows: The Island of Hawaii, where the appellants' property is located, suffered two natural disasters in 1960, a volcanic eruption and a tsunami (tidal wave). As a consequence, in 1961 the Hawaii legislature created a Natural Disaster Claims Commission to determine the value of property destroyed by such occurrences, with the claimant thereafter receiving tax credits in that amount. This legislation, Act 173, S.L.H. 1961, as amended, is now HRS ch. 234.[1]

---

[1]Those parts of the statute most relevant to this case are HRS §§ 234-4 and 234-5. Section 234-4 reads in part:

The finding of the commission shall be final, unless within thirty days after receipt of a copy of the commission's certification to the director, the claimant files a notice of appeal to the circuit court in the county for which the commission was appointed. In all cases of such appeal, the commission and the director shall be notified of the pendency thereof by the clerk of the court. On appeal to the circuit court, the claimant shall be entitled to trial by jury. The right to trial by jury shall be deemed to be waived unless claimed within ten days from the date the notice of appeal is filed. The court may, by proper rules, prescribe the

The Governor appointed the members of the Commission, which on November 21, 1961 certified the appellants' loss to be $18,200.[2] Some two and one-half years later, in 1964, the Director of Taxation suspended the granting of tax credits. Following the resignation of the ·original Commission members, a second group of commissioners was appointed in 1965 (hereinafter referred to as the Second Commission), which recertified the loss at $2,400 on January 5, 1966.

procedure to be followed in such appeals, and shall give such appeals precedence over all other civil cases. Upon determination of the appeal, the court shall enter judgment as to the amount of the claimant's loss, which judgment shall be final. The clerk of the court shall certify the judgment of the court to the director.

The finding of the commission or the judgment of the court as to the amount of the loss suffered by the claimant shall be final for the purposes of chapters 235, 237, and 246 notwithstanding section 235-7.

Section § 234-5 reads:

§ 234-5 *Review of claims, adjustment.* The amount of loss certified by the natural disaster claims commission or adjudged by the court pursuant to section 234-4 shall be subject to review by the commission or the court in the event substantial and new evidence should show more accurately the amount of losses suffered from damage by destruction of real or personal property resulting from the natural disaster, provided·, that any such substantial and new evidence shall only be acceptable if applicable as of the date the losses were incurred. In such event, the taxpayer, within six months from the filing of the original claim, may file an amended claim with the commission, or with the court if an appeal is pending or the court has rendered a judgment, and the commission or the court shall receive further proof of the amount of the loss initially claimed by the taxpayer. The determination of the loss by the commission on the amended claim may be appealed by the claimant to the circuit court in the same manner as an appeal in the case of a determination of loss by the commission on the original claim. The judgment of the circuit court shall be final in all cases. In the event of any change in the amount of the certification or judgment furnished to the director of taxation, the commission or the clerk of the court shall notify the director of such adjustments, and the director shall make appropriate adjustments in the remitting, refunding, or forgiveness of taxes above provided; in case any adjustments are made, any tax refund which exceeds the amount of adjusted loss recoverable may be collected in the same manner as a tax due and payable under chapters 235, 237, or 246.

The language of both sections has remained virtually unchanged since the statute was originally enacted, except that until the 1966 amendment, there was no provision for appeal to the circuit court.

[2]The Administrative Procedure Act, HRS ch. 91, did not take effect until January 2, 1962, and is therefore not involved in the certification ·of November 21, 1961.

The appellants then sought judicial review by the circuit court, which decided that both the First Commission and the Second Commission were in error and, after a de novo hearing, made its own determination of $5,250 as the correct amount.

On appeal from the decision below, the appellants argue that the determination of losses by the First Commission was final, that there was no authority for the appointment of a Second Commission to recertify such losses, and that the State is equitably estopped from contesting and overturning the findings of the First Commission. We agree.

The appellants also argue that if the appointment of the Second Commission was allowable, its procedures both in challenging the First Commission and redetermining losses were improper; that the Attorney General's office should not have been permitted to represent the Second Commission against the First, which it had previously advised; and that the circuit court erred in its de novo computation of losses at $5,250. We do not find it necessary to reach these arguments.

The appellee attacks the validity of the First Commission's finding on the basis of various irregularities in its procedures, arguing that it is open both to rehearing and collateral attack. It opposes the applicability of equitable estoppel and defends the actions of the Second Commission, the Attorney General's office, and the adequacy of judicial review.

It must be noted at the outset that the Natural Disaster Claims Commission's function was quasi-judicial in nature, as opposed to merely executive, legislative, or administrative, for the reason that its purpose was to determine losses. Because of the time lapse between the original certification and the suspension of tax credits, as well as on account of the quasi-judicial nature of the First Commission, the reconsideration by the Second Commission was at least the substantial equivalent of

a new proceeding. Therefore, the threshold problem before us is to determine whether the circuit court should have permitted any reconsideration in the circumstances presented by this case.

The problem of the extent to which an administrative agency should have continuing jurisdiction to reverse or modify prior decisions is made more difficult here because the statute which clearly authorizes reconsideration at the request of the claimant does not provide for reconsideration by the Commission on its own initiative. This lack of provision for reconsideration upon the initiative of the Commission was not affected by the 1966 amendment allowing judicial review. Moreover, HRS § 234-4 specifies that the Commission finding is "final" unless the claimant appeals. With so little guidance from the legislature regarding the Commission's power to reconsider, we are forced to develop our own standards. Professor Davis discusses this problem in his *Administrative Law Treatise,* § 18.09 at 607 (1958) :

> When statutes are silent and legislative intent unclear, agencies and reviewing courts must work out the practices and the limits on reopening. The considerations affecting reopening to · take account of new developments or of new evidence of old developments often differ from those affecting the correction of mistakes or shifts in judgment about law or policy. Usually the search for a basic principle to guide reopening is futile; the results usually must reflect the needs that are unique to each administrative task. Factors to be weighed are the advantages of repose, the desire for stability, the importance of administrative freedom to reformulate policy, the extent of party reliance upon the first decision, the degree of care or haste in making the earlier decision, the general equities of each problem.

The weight of authority requires that an administrative agency's power to reconsider final decisions be statutorily grounded, either stated expressly or inferred from a reading of the entire statute. *Keating* v. *State,* 167 So. 2d 46 (Fla. Ct. App. 1964) ; *Koehn* v. *State Board of Equalization,* 166 Cal. App. 2d 109, 333 P.2d 125 (1958) ; *Pearce Hospital Foundation* v. *Illinois Public Aid Comm'n,* 15 Ill. 2d 301, 154 N.E.2d 691 (1958) ; *Peerless Fixture Co.* v. *Keitel,* 355 Mo. 144, 195 S.W.2d 449 (1946). *See generally,* Davis, *Administrative Law Treatise,* § 18.09 (1958, Supp. 1970) . A few courts have held that such power is inherent or implied. *Handlon* v. *Town of Belleville,* 4 N.J. 99, 106-07, 71 A.2d 624, 627-28 (1950) ; *Anchor Casualty Co.* v. *Bongards Co-operative Creamery Ass'n,* 253 Minn. 101, 91 N.W.2d 122 (1958) . But even these cases require that the power be exercised by the agency within a reasonable time, which the Commission in the present case failed to do by waiting two and one-half years.

We hold that a statutory basis is necessary for an administrative body to initiate reconsideration of its prior final quasi-judicial decisions. As previously pointed out, the statute involved in the present case provides for appeals by claimants only, and it makes the Commission's decision final. The Commission was appointed, it accomplished its purpose of assigning valuation to property losses, and its conclusion must therefore stand.

We do not regard the irregularities which the appellee argues were committed by the First Commission as fatal to its determination.

The appellee argues that the findings of the First Commission are suspect because tax office records were used as a basis for its valuation formula, information was gathered by individual commissioners, and claimants were allowed to make statements with no supporting evidence. However, it is our opinion that these proceedings cannot be characterized as adversary either in form or

substance, since there were no essential elements of contested litigation. *Compare, Morgan* v. *United States,* 304 U.S. 1, 20 (1938). Although administrative convenience or even necessity cannot override the constitutional requirement of due process, *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n,* 301 U.S. 292, 304-05 (1937), agencies "should be free to fashion their own rules of procedure and to pursue methods of inquiry capable of permitting them to discharge their multitudinous duties." *F.C.C.* v. *Pottsville Broadcasting Co.,* 309 U.S. 134, 143 (1940). This principle is particularly applicable in this case in view of the practical demands made by the First Commission's function. A commission initially comes into existence after the occurrence of a natural disaster, and its life automatically ends upon the determination of all consequent losses.[3] Without the permanence of other administrative bodies such as regulatory agencies, and without a professional staff, refinement of formal procedures is not to be expected. The commissioners, who serve without pay,[4] must decide a large number of claims, over 700 relating to the 1960 disasters, in as short a time period as possible so that claimants can receive the benefits of tax credits quickly. Moreover, it must be noted that the statute itself offers no guidance regarding procedural formalities.

The appellee also argues that two of the three members of the First Commission were interested parties un-

---

[3]HRS § 234-3 reads in part:

Whenever, pursuant to section 234-2, the governor has declared that a natural disaster has occurred, there shall be established in each county affected, a natural disaster claims commission as defined in section 234-1 (1), whose duties shall be to receive, process, and pass upon the application for tax relief by certification as provided for in this chapter. . . . The commission shall continue in existence until all losses within the particular county are fully determined and certified.

[4]HRS § 234-3 also states:

The members of the commission shall elect their chairman and shall serve without pay, but shall be reimbursed by the State for any reasonable and necessary expense incurred in the course of their duties as commissioners.

der HRS § 234-3[5] by virtue of connections with claimants other than those involved in this particular case. We agree, however, with the circuit court's resolution of this program: Under the doctrine of necessity, an administrative officer exercising a quasi-judicial function can act in a proceeding, when he would otherwise be disqualified, if jurisdiction is exclusive and no provision exists for substitution. *Marquette Cement Mfg. Co.* v. *FTC,* 147 F.2d 589, 593-94 (7th Cir. 1945) ; *Brinkley* v. *Hassig,* 83 F.2d 351, 357 (10th Cir. 1936) ; *Mosman* v. *Mathison,* 90 Idaho 76, 85, 408 P.2d 450, 455 (1965) ; *Clark* v. *Blochowiak,* 241 Wis. 236, 242-43, 5 N.W.2d 772, 774 (1942).

There is no doubt that the First Commission could have done a better job, and it is not our intention to defend its methods. Nevertheless, viewing the circumstances in their totality, we do not find the alleged irregularities prejudicial to the State in the absence of fraud, an issue which has not been raised in this case and concerning which we do not express any opinion.

Factual circumstances most analogous to those presented in this case are found in *Butte, Anaconda & Pacific Ry.* v. *United States,* 290 U.S. 127 (1933). That case involved an Interstate Commerce Commission decision to reimburse a railroad for deficits incurred during a period of federal control. Two years after the amount of the reimbursement was determined and was received by the railroad, the I.C.C. decided to reopen the proceeding, and it then dismissed the railway's claim for the reason that earlier it had mistakenly construed the word "deficit". The railroad refused repayment, and the government then brought an action to recover the money. The

---

[5]The applicable portion of HRS § 234-3 states:

No person shall sit as a member of a commission for a particular disaster in which he has any interest, directly or indirectly, in any type of claim, or who is related to any claimant by affinity or consanguinity within the third degree, or who is employed by, is an agent of, or is connected in business with any one or more of the claimants.

Supreme Court held that, since the statute provided no method of review, the I.C.C. had no power to reconsider its earlier decision, regardless of whether there was an error of fact or of law. The Court's reasoning appears sound to us, and because the facts are so similar, we adopt it as our own.

An alternative ground upon which we base our holding is that of equitable estoppel. While some cases hold that the government can be estopped and other cases are contra, we agree with the view expressed by Professor Davis:

> Because of the erosion of the doctrine of sovereign immunity, the cases estopping the government may largely represent the law of the future, even though they are still exceptional. Davis, *Administrative Law Treatise,* § 17.03, at 504 (1958) .

We hold that the doctrine of equitable estoppel is fully applicable against the government if it is necessary to invoke it to prevent manifest injustice. *City and County of Denver* v. *Stackhouse,* 135 Colo. 289, 310 P.2d 296 (1957) ; *Market Street Ry. Co.* v. *State Bd. of Equalization,* 137 Cal. App. 2d 87, 290 P.2d 20 (1955) ; *Florida Livestock Bd.* v. *Gladden,* 76 So. 2d 291 (Fla. 1954) ; *Cities Service Oil Co.* v. *City of Des Plaines,* 21 Ill. 2d 157, 171 N.E.2d 605 (1961) . In our opinion, the manifest injustice present in this case requires the invocation of equitable estoppel. Under HRS ch. 234, a claimant may use tax credits only against taxes on real property located on the same island where damages were suffered, or against taxes due on account of any trade or business conducted on the island where the losses were incurred, or against taxes due on account of income earned or derived on the island where the losses were incurred.[6]

---

[6] HRS § 234-4 reads in part:
(c) Upon receipt of the certification from the commission or the

The purpose of the limitation was to encourage the retention of investments in disaster areas. The appellant, in reliance upon the receipt of tax credits following the First Commission's determination, developed his property by erecting an apartment house upon it. A denial of such credits after more than two years means, in effect, that his investment in compliance with the statute is wholly dependent upon the State's continuing decision not to take away that which it gives. We think this is a patently unfair burden to impose upon the claimant.

The policies to be weighed in cases involving the propriety of an administrative decision to initiate reconsideration are apparent: A flat prohibition against such reconsiderations can easily lead to flagrant abuses on the part of claimants. However, too much liberality in permitting reconsiderations not only deprives decisions of dignity and force, but can also contribute to carelessness by undue reliance on reconsideration. While the First Commission's procedures may cast some doubt upon its conclusions, it is our opinion that in this case the policy of finality outweighs the State's interest in avoiding a potential giveaway of tax credits.

clerk of the circuit court, the director shall remit or refund from the current general revenues of the State or forgive, for a period not to exceed five consecutive years commencing January 1 of the year in which the disaster occurred, until the amount of the loss certified or adjudged is recovered up to but not in excess of the limits provided in section 234-8 or until the claimant recovers the full amount of his certified or adjudged loss, or until the expiration of the five year period, whichever shall first occur:

(1) Real property taxes for that year and thereafter as provided above, due from the claimant on account of any real property located on the island on which the losses were incurred under chapter 246,

(2) Taxes due from the claimant under chapter 237 on account of any trade or business conducted by the claimant on the island on which the losses were incurred for the year in which the disaster occurred and thereafter as provided above, and

(3) Taxes due from the claimant under chapter 235 on account of any income earned or derived by the claimant on the island on which the losses were incurred for the year in which the disaster occurred and thereafter as provided above.

In no event shall taxes due and payable under chapter 235 by a public utility as defined in section 269-1, be remitted, refunded, or forgiven.

Our holding that the original valuations must stand necessarily, of course, renders questions regarding the actions of the Second Commission and the circuit court moot.

The judgment of the circuit court is reversed, and this case is remanded to that court for proceedings consistent with this opinion.

*Shuichi Miyasaki* and *Roy K. Nakamoto* (*Masanori Kushi,* with them on the briefs) for appellants.

*T. Bruce Honda,* Deputy Attorney General (*George Pai,* Attorney General, of counsel) for appellee.

---

DISSENTING OPINION OF RICHARDSON, C.J.

I respectfully dissent.

The majority would reverse the trial court's *de novo* computation of appellant's losses at $5250, and uphold the original valuation of $18,200, as determined by the First Commission. The majority bases its decision on two conclusions of law:

(1) In the absence of express statutory authority, the Second Commission was without authority to recertify losses as determined by the First Commission; and

(2) The State is equitably estopped from contesting and overturning the findings of the First Commission. The Circuit Court was without jurisdiction to review the findings of the two commissions, and its findings are moot.

I disagree. As to the first conclusion, I believe that administrative tribunals possess the inherent power of reconsideration of their judicial acts. *Handlon* v. *Town of Belleville,* 4 N.J. 99, 106-07, 71 A.2d 624, 627-28 (1950). This court may look for guidance to the courts of New York, which have found that administrative

agencies possess an implied power to reconsider their decision in some instances, but have denied the existence of such powers in other cases. On the one hand, the power was held to be lacking to rescind approval of transfer of a liquor license or to rescind an order permitting redemption of property sold for taxes where a cloud on title would pall the property if reconsideration were permitted. *People ex rel. Cochrane* v. *Wells,* 11 Misc. 239, 32 N.Y.S. 973 (Sup. Ct. 1895) ; *People ex rel. Chase* v. *Wemple,* 144 N.Y. 478, 39 N.E. 397 (1895) .

On the other hand, New York courts have balanced such consideration against "the grave consequences that might follow if a decision once made were to be considered beyond recall" or "the public interest and the supervisory nature of the administrative agency's powers" which warranted the finding of an implied power to reconsider *People ex rel. New York Fire Ins. Exchange* v. *Phillips,* 203 App. Div. 13, 16, 196 N.Y.S. 202, 204 (3d Dept. 1922) , *rev'd on other grounds,* 237 N.Y. 167, 142 N.E. 574 (1923) ; *People ex rel. West Seneca* v. *Public Service Comm'n,* 130 App. Div. 335, 340-42, 114 N.Y.S. 636, 639-40 (3d Dept. 1909) , *appeal dismissed,* 195 N.Y. 562, 88 N.E. 1128 (1909) ; see Weiss, *Administrative Reconsideration: Some Recent Developments in New York,* 28 N.Y.U.L. Rev. 1262, 1271 (1953) . These courts have found an implied power to reconsider absent express statutory grant or denial of such power where the latter considerations prevail.

The factual circumstances of an earlier New York decision, *People ex rel. West Seneca* v. *Public Service Comm'n, supra,* are analogous to those presented in the instant case. That case involved an April 30, 1907 decision of the New York Board of Railroad Commissioners concerning the number and location of railroad street crossings in West Seneca, N.Y. On July 1, the effective date of the Public Service Commissions Law, the Board of Railroad Commissioners was abolished and its powers

and duties transferred to the Public Service Commission. On June 29, 1908, the Commission announced that it would rehear and review the Board's decision. The Supreme Court held that the Commission derived an implied power to reconsider from the railroad law. This statute by implication conferred on the Board the power to change its decision in respect to all matters within its jurisdiction. "The policy of the state was to vest extensive powers in the board of railroad commissioners in reference to these matters, and, if such board was without power to reconsider a matter simply because it had once reached a conclusion in reference thereto, its usefulness must have been seriously hampered, and the policy of the law largely thwarted." *People ex rel. West Seneca* v. *Public Service Comm'n, supra,* 130 App. Div. at 342, 114 N.Y.S. at 640.

The New York Court of Appeals, writing in two 1919 decisions, set standards for a finding of the existence of an implied power to reconsider an administrative decision. Judge Cardozo, writing for the court in *Equitable Trust Co. of New York* v. *Hamilton,* 226 N.Y. 241, 246, 123 N.E. 380, 382 (1919), found that a Board of Supervisors had the inherent power to rescind the allowance of a claim on the basis of a finding of error, because the Board "ought to have some opportunity to undo and correct an error apparent to themselves." In *People ex rel. Finnegan* v. *McBride,* 226 N.Y. 252, 257-58, 123 N.E. 374, 376 (1919), the court ruled that a civil service commission, which exercised a quasi-judicial function, possessed the implied power to vacate its own order by setting aside an eligible list if such list were the result of illegality, irregularity in vital matters, or fraud. The *Finnegan* standard has generally been followed in New York, and I would apply it to decide the instant case.

I also disagree with the majority's opinion that the doctrine of equitable estoppel may be invoked against

the government in this case. The doctrine of equitable estoppel should not be applied to impair the State's exercise of its sovereign powers of a state. This court has so held in the enforcement of police powers. *Godbold* v. *Manibog,* 36 Haw. 206, 214, *rehearing denied,* 36 Haw. 230 (1942). This rule has been expanded in other jurisdictions to the doctrine that the government cannot be estopped from collecting taxes or determining tax liabilities because of the mistake or erroneous ruling of an administrative official. *Burhans* v. *County of Kern,* 170 Cal. App. 2d 218, 226, 338 P.2d 546, 551-52 (1959); *State* v. *Erie R.R.,* 23 N.J. Misc. 203, 42 A.2d 759, 765 (Sup. Ct. 1945). Hence the defense of equitable estoppel should not be available to appellants.

The circuit court's decision should be affirmed if the First Commission's decision demonstrated illegality, irregularity in vital matters, or fraud.

The record on appeal by stipulation of the parties included the transcript of proceedings in *Hawaiian Coffee Co.* v. *Natural Disaster Claims Comm'n* (No. 1359, Haw. 3d Cir. Ct., Mar. 31, 1970), a case presenting similar questions of law and fact to the instant case. In both cases, Judge Dick Yin Wong found the First Commission's certification of the claimants' losses not supported by evidence.

The Commission was charged with determining the claimants' total loss in each case, based upon the difference between the market value of the property immediately prior to and immediately after the date of the natural disaster. HRS § 234-4. In the instant case, the claimants had purchased a thirty-seven year old house and garage two months before the tsunami for $17,000. The claimants filed a claim for loss of $23,000, based on replacement cost plus the loss of aa lava fill. The First Commission allowed a loss of $18,200, based on replacement cost less depreciation.

In the *Hawaiian Coffee* case, claimant filed a claim

for $128,000, alleging total destruction of its crop. A neighboring farmer, exposed to the same volcanic fallout, filed a claim based on one-half destruction. Although his fields were devastated to the same extent as Hawaiian Coffee's, he produced a crop in the following year. None of the First Commission members visited the fields of either farmer, but nevertheless certified the full amount of both claims.

The record below demonstrated that in Judge Wong's opinion, the First Commission's decisions were characterized by irregularity in vital matters, and therefore were subject to administrative reconsideration.

Having concluded that the Second Commission possessed an implied power to reconsider the First Commission's certification of losses, I must next determine whether the Second Commission properly certified claimants' losses. The parties stipulated that the Second Commission recertified claimants' losses in the amount of $2400 without prior notice or opportunity to be heard. Although the claimants subsequently received a hearing before the Commission, the recertified amount of loss was affirmed. No evidence was adduced at trial to indicate how the Second Commission's determination was made or on what evidence it was based.

The right to a hearing on notice before property is taken or substantial rights withdrawn, which have previously been awarded in a judicial or administrative proceeding, is of the essence of procedural due process. *Handlon* v. *Town of Belleville*, 4 N.J. 99, 107, 71 A.2d 624, 628 (1950); *Garfield* v. *United States ex rel. Goldsby*, 211 U.S. 249, 262 (1908).

The appellants' claim was recertified by the Second Commission on January 5, 1966. The applicable statute in effect at that time, R.L.H. § 131E-6 (now HRS § 234-4) provided that the determination of the loss by the Commission shall be final. Because no right of appeal was

available at the time the Second Commission's action was taken, the recertification violated claimants' right to due process of law. Therefore the Second Commission's act is void and subject to collateral attack.

On May 4, 1966, the legislature amended R.L.H. chap. 131E. Section 4 of Act 48, S.L.H. 1966, granted victims of the tsunami of 1960 the right of appeal in circuit court from the certification or recertification of any claim prior to the effective date of the Act. In the absence of a statutory right of appeal, an administrative decision is not subject to judicial review "unless the decision is wholly unsupported by the evidence or is wholly dependent upon a question of law, or is seen to be clearly arbitrary or capricious." *Silberschein* v. *United States,* 266 U.S. 221, 225 (1924). Under either theory, Judge Wong's review of the actions of the First and Second Commissions and *de novo* determination of the amount of claimants' losses were properly taken.

The majority implies that a finding of fraud by the trial court might have justified administrative and judicial reconsideration in this case. The inconsistency in this conclusion is that the Second Commission and Circuit Court, which must reconsider the claim to determine fraud, are barred from reconsidering the claim in the absence of fraud.

The actions of both the First and Second Commissions were irregular and the proper subject of judicial review.

I would affirm.