**Daniel Long FOX and Henry Cliff, for themselves and all others similarly situated, Appellants,**

v.

**Rogers MORTON, Secretary of the Interior, et al., Appellees.**

**No. 73–2009.**

United States Court of Appeals,
Ninth Circuit.

Oct. 29, 1974.

As Modified on Denial of Rehearing
Dec. 5, 1974.

Frank Altman, Montana Legal Services Assn., Havre, Mont., for appellants.

Donald R. Marble, Chester, Mont., for amicus curiae, Fort Belknap Indian Community.

Otis L. Packwood, U. S. Atty., Billings, Mont., for appellees.

Before KILKENNY and SNEED, Circuit Judges, and GRAY, District Judge.*

OPINION

KILKENNY, Circuit Judge:

Appellants are American Indians residing on the Fort Belknap Indian Reservation in Montana. Prior to April 21, 1972, they were participants in the Tribal Work Experience Program (TWEP) operating under the Bureau of Indian Affairs Welfare program and ultimately under the supervision of officials in the Bureau of Indian Affairs and the Department of the Interior, appellees. Appellants' tribal organization was party to a TWEP contract in which it was agreed that the participants would perform certain tasks under the program in return for monetary compensation. Funds for TWEP were granted pursuant to the Snyder Act, 25 U.S.C. § 13.

About March 21, 1972, appellants were informed by individual letters from the BIA office that their TWEP participation would terminate upon expiration of the contract. Appellants' attorney requested that a hearing be granted prior to termination, which request appellees refused. Appellants thereupon filed a complaint asking for injunctive and declaratory relief on the matter of the hearing. The district court denied relief to the appellants, holding they were not entitled to a due process hearing under Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, (1970), or otherwise. This appeal follows.

■ At the outset, we recognize that assistance programs established under the Snyder Act are for the special benefit of Indians and Indian communities and must be liberally construed in their favor. Ruiz v. Morton, 462 F.2d 818, 821 (CA9 1972) aff'd sub nom. Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); Rockbridge v. Lincoln, 449 F.2d 567, 571 (CA9 1971). Ruiz stands for the principle that our government has an overriding duty of fairness when dealing with Indians, one founded upon a relationship of trust for the benefits of these ". . . dependent and sometimes exploited people." Seminole Nation v. United States, 316 U.S. 286, 296, 62 S.Ct. 1049, 86 L.Ed. 1480 (1942). The Snyder Act was enacted with this principle in mind, and its programs must be administered accordingly. Neither the court below nor the parties mention this concept. Therefore, the district court's conclusions must be reexamined under the *Ruiz* principle.

■ In literal terms, appellants were contractually employed under TWEP, but such formal employment should not be allowed to disguise the true nature of the program, which was to provide "general assistance" to the entitled Indians. The contract itself used that key term, and TWEP is undoubtedly part of the "general support," "relief," and "industrial assistance" provided under the Snyder Act. Mere form must not be permitted to dominate over substance in this area. Appellants were denied general assistance, not just jobs.

The district court declined to apply the rule of Goldberg v. Kelly, *supra*, because, it said, appellants could find alternative means of support under other BIA general assistance. Admittedly, *Goldberg* dealt with the ". . . very means by which to live . . . ." 397 U.S. at 264, 90 S.Ct. at 1018. However, the Supreme Court spoke of other important considerations involved:

"From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. . . . Public assistance, then, is not mere charity, but a means to 'promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity.' The same governmental interests that counsel the provision of welfare, counsel as well its uninterrupted provision to those eligible to receive it; pre-termination evidentiary hearings

---

* The Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

are indispensible to that end." [*Id.* at 264, 265, 90 S.Ct. at 1019; emphasis added.]

■ The Court then went on to note that essentially a balancing process is involved, with the recipient's interest in uninterrupted assistance and the accompanying advantages to the national welfare outweighing the government's fiscal and administrative concerns in securing summary termination. We might also note that appellants possessed the additional interest in the dignity of work, which further tips the balance in their favor. Thus, the mere fact that recipients could obtain their sustenance elsewhere would not necessarily vitiate due process requirements. The elements of interruption, denial of gainful employment, and consequent disruption of their normal method of living would still be present.

■ Assuming, *arguendo*, that contract law is controlling here, the fact that the BIA itself describes TWEP as general assistance in the contract prevents the appellees from now denying the nature of the program. Courts have generally refused to apply the doctrine of estoppel or waiver to the government under a theory akin to sovereign immunity. However, there has lately been a broadening of the exceptions to include an estoppel against the United States where justice and fair play require it. Moser v. United States, 341 U.S. 41, 71 S.Ct. 553, 95 L.Ed. 729 (1951); United States v. Lazy FC Ranch, 481 F.2d 985 (CA9 1973).

We, therefore, hold appellees to their word. Having defined appellants' participation as "general assistance," they are now estopped to deny it.

■ Finally, the contention that control of TWEP rested with the Indian community is groundless. While local Indians helped administer the program, ultimate control resided in BIA and the Secretary of the Interior. This is confirmed by the fact that TWEP's termination came by order of the BIA's Social Services office at Fort Belknap.

We hold, therefore, that summary termination of TWEP deprived appellants of due process rights which could have been secured by a properly conducted evidentiary hearing. At such hearing all factors could have been aired, including both appellants' eligibility for the program and the government's interest in terminating it.

Reversed and remanded.

WILLIAM P. GRAY, District Judge (dissenting):

Although it may very well be that the Indians here concerned were shabbily treated, I am unable to agree that the particular relief sought, and now granted by the majority, is appropriate. The appellants were terminated from their employment under the TWEP project, not because of an administrative determination that they were ineligible, but because the funds allocated to the project had become exhausted. No one contends that the appellants had a constitutional right that the project be continued; so there is no occasion for a hearing in order that the reasons for the termination might be argued.

Judge Battin, in his "Memorandum Opinion And Order," from which this appeal is taken, found that "the ending of TWEP in April did not effectively terminate the plaintiffs' receipt of ordinary general assistance, for all they had to do to continue to receive checks in substantially the same amounts was to indicate their desire to do so." There clearly was evidence to support such a finding; thus, there is no occasion for a hearing to establish the eligibility of the petitioners to continue as beneficiaries under the general relief program.

There is some indication that, due to lack of communication or through administrative inefficiency, some of the Indians affected by the termination of the TWEP program were not promptly picked up on the relief rolls. But such unfortunate occurrences hardly form the basis for a *Goldberg* mandated hearing.

I would affirm Judge Battin's dismissal of the action for the reasons stated in his Memorandum Opinion.