GLORIA FILIPO, individually, the unborn child of ANATELEA and GLORIA FILIPO, by and through the guardian ad litem and mother GLORIA FILIPO, Plaintiff-Appellee, Cross-Appellant, *v.* ANDREW CHANG, Director of the Department of Social Services and Housing, State of Hawaii; EDWIN TAM, Administrator of the Department of Social Services and Housing, State of Hawaii; and DEPARTMENT OF SOCIAL SERVICES AND HOUSING, State of Hawaii, Defendants-Appellants, Cross-Appellees

NO. 6367

OCTOBER 21, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM, NAKAMURA, JJ.

OPINION OF THE COURT BY LUM, J.

By summary judgment, the first circuit court ordered the department of social services and housing (DSSH) to pay plaintiff Gloria Filipo, a pregnant mother, additional welfare assistance of $44 per month for her unborn child.[1] DSSH appeals this summary judgment order.

The foregoing judgment resulted from a complaint brought by plaintiff, individually and as guardian ad litem for her unborn child, for declaratory and injunctive relief as a class action under the Hawaii Rules of Civil Procedure[2] to

---

[1] HRS § 346-53(b) (1976), provides:

(b) The maximum basic needs allowance which the department shall initially pay a recipient considering income and resources in accordance with this chapter shall be $100 *plus an additional $44 for each additional person* whose needs have been taken into account by the department.

[2] H.R.C.P. 23(a), 23(b)(2) and 24(b)(2).

include as a class "all mothers and unborn children." The court denied class certification and denied intervention by 41 affiants (mothers) to intervene as party plaintiffs.[3] From this order of denial, plaintiff cross appeals. In these appeals, we review whether the court was correct in granting summary judgment and denying class certification and intervention. We uphold the trial judge and affirm his decisions.[4]

I.

On January 26, 1976, plaintiff applied for welfare assistance with DSSH because her husband, a full-time truck driver, had lost his job. She had three children and was visibly pregnant with her fourth child expected in April, 1976.

DSSH ruled that plaintiff, her husband, and their three children, were eligible for non-shelter aid under the federal aid to families of dependent children program[5] (AFDC), but DSSH refused to provide an additional $44 per month for plaintiff's unborn child for non-shelter expenses.[6]

As a requisite to a full understanding of the issue of whether plaintiff is entitled to the additional $44 for her unborn child, we need to examine the eligibility of an unborn

---

[3] The court originally denied class action without prejudice. Plaintiff subsequently filed another motion for class certification and included 41 affidavits of pregnant mothers seeking intervention.

[4] In doing so, we do not reach the question of whether an "unborn child" is a "person" entitled to rights under the law or is a "person" for any other purpose, including inheritance, descent and distribution, personal injury, civil rights, and abortion.

[5] The AFDC program is one of three programs established by the Social Security Act of 1975. 42 U.S.C. § 601 (1976). States participating in the program must comply with the mandatory requirements of federal regulations for which they receive federal matching funds. Elective programs are available to states on a matching fund basis, such as "payments with respect to an unborn child when the fact of pregnancy has been determined by medical diagnosis. . . ." 45 C.F.R. § 233.90(c)(2)(ii).

[6] See note 1.

child for AFDC funds as it existed some 23 years ago. At that time DSSH was authorized by law to accept federal grants for public assistance,[7] and to make appropriate rules to comply with such assistance.[8] Accordingly, DSSH adopted such rules, among which was Public Welfare Manual (PWM) 3241:

3241 *The Unborn Child*

1. An unborn child is eligible for assistance from AFDC funds when other specific eligibility requirements for that category are met; e.g., absence of parent support due to incapacity or absence, death or unemployment.

2. A doctor's statement or a statement by the applicant that she had been examined by a physician resulting in a diagnosis of pregnancy is required to verify pregnancy before eligibility can be established.

PWM 3241 was thereafter used by DSSH to obtain additional assistance for a pregnant mother from the federal government. To do so, DSSH evaluated the needs of the pregnant mother, including the needs of her unborn child, for medical care, special diets and nourishment. Assistance was then paid to the pregnant mother on a 50-50 matching basis by the State and federal government. Of course, the amounts paid to pregnant mothers would vary depending on their individual needs and circumstances of their pregnancy.

For 23 years DSSH continuously used PWM 3241 to obtain such additional assistance for pregnant mothers. And, even though under AFDC, benefits cannot be granted to a caretaker mother unless there is an eligible child, PWM 3241 was used by DSSH as a means of obtaining AFDC payments for pregnant, but otherwise childless, women.

In 1975, a major change affecting welfare assistance occurred in Hawaii. Act 145,[9] Session Laws of Hawaii 1975, was

---

[7] RLH § 108-3 (1955).

[8] RLH § 108-7(f) (1955).

[9] HRS §§ 346-51 to -60 (Supp. 1975).

enacted into law. The Act adopted a "flat grant"[10] system. A monetary ceiling was placed on the amount a recipient was authorized to receive. As an example, the maximum basic need allowance for a recipient was $100 plus an additional $44 for "each person."[11]

In spite of Act 145, PWM 3241 continued as part of the rules and regulations of DSSH.

In denying plaintiff's application for an additional $44 per month for her unborn child, DSSH ignored PWM 3241 and concluded that her unborn child was ineligible for AFDC benefits under § 346-55[12] and consequently was not entitled to such benefits because her unborn child was not a "person" within the purview of § 346-53(a) and (b).[13]

---

[10] Under such a flat grant system, the assistance grant is calculated by determining the number of eligible persons in the household, then fitting in the number of eligible household members into the standardized schedules for non-shelter and shelter benefits.

[11] *See* note 1.

[12] § 346-55 *Children.* A child shall be eligible for public assistance who:

(1) Is in need, and has not sufficient income or other resources to provide health care and support to maintain a standard consistent with this chapter;

(2) Has not attained the age of eighteen years or twenty-one years if regularly attending school;

(3) Is deprived of parental support or suitable care by reason of the death, continued absence from home, physical or mental incapacity, unemployment, or cruelty, neglect, or depravity on the part of the parent;

(4) Is living in a home with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, uncle, aunt, first cousin, nephew, or niece in a place of residence maintained by such a relative as his own home; or is living in a family home or institution conforming to the standards fixed by the department of social services and housing.

HRS § 346-55 (1976).

[13] Sec. 346-53 *Determination of amount of assistance.* (a) In granting public assistance to a person under this chapter the department may take into account part or all of the needs of the *person's dependents* or those *persons* essential to his well being, provided that they are also eligible for public assistance. (Emphasis added.)

(b) *See* note 1.

HRS § 346-53 (1976).

However, because plaintiff's application pointed to an explicit discrepancy between PWM 3241 and Act 145, DSSH adopted PWM 3303[14] and PWM 3112.6[15] in July, 1976.

Plaintiff's complaint alleged that the denial of welfare assistance by DSSH to her unborn child violated the express language of PWM 3241. Plaintiff contended that PWM 3241 on its face deems an unborn child eligible for AFDC assistance, and that DSSH's long-standing practice of determining mothers of unborn children eligible for AFDC assistance concedes that unborn children are children eligible for welfare payments.

In support of its motion to dismiss or alternatively for summary judgment, DSSH argued, *inter alia,* that PWM 3241 was not promulgated pursuant to HRS, chapter 91, Hawaii Administrative Procedure Act (HAPA), adopted in 1961 and, therefore, was invalid.

The trial judge in granting summary judgment to plaintiff concluded: (1) DSSH has conceded by its long-standing interpretation of PWM 3241 that unborn children meet the eligibility requirements of HRS § 346-55 (Supp. 1975) (and its

---

[14] 3303  *Basic Requirements – Monthly Standard Allowance*

1. A Monthly Standard Allowance is defined to mean "basic needs allowance of a single monthly public assistance grant expressed in a dollar amount per *recipient* or per *recipient* family for all usual recurring living expenses excluding housing, utilities and medical care." (Emphasis added.)

2. A Monthly Standard Allowance based on number of *eligible persons* in the household shall be included in each financial plan for an individual or family maintaining an independent household. (Emphasis added.)

[15] 3112.6  *The Unborn Child*

1. For purposes of AFDC, a needy pregnant woman shall be eligible, provided the unborn child meets other specific eligibility requirements of the category, e.g., deprived of parental support and care due to incapacity, death, continued absence or unemployment of his parent.

2. The doctor's written or oral statement is required to verify pregnancy before eligibility can be established.

3. *The pregnant woman and the unborn child together shall be considered as one person for the purposes of public assistance payment*. (Emphasis added.)

predecessor) and PWM 3112.1;[16] (2) the clear and unambiguous language of PWM 3241 conclusively requires that unborn children be deemed categorically eligible for non-shelter AFDC payments; (3) because unborn children are categorically eligible for AFDC under HRS § 346-55 (Supp. 1975) and PWM 3241 and 3112.1, they are within the purview of the terms "child" and "person" as used in HRS § 346-55 (Supp. 1975), HRS § 346-53 (Supp. 1975), and PWM 3303, and are therefore entitled to a separate AFDC payment; and (4) while PWM 3241 has never been promulgated in accordance with the Administrative Procedure Act, it is a valid regulation with legal force and effect since it has been incorporated in defendants' Public Welfare Manual for approximately 23 years, and DSSH is estopped from using the Administrative Procedure Act as a bar to the relief sought by plaintiff.

## II.

DSSH argues that because PWM 3241 was not legally adopted in accordance with HAPA, it is perforce invalid. Consequently, the lower court erred in holding that unpromulgated PWM 3241 was valid against the State.

We note first of all that section 17 of HAPA provided:

Section 17. *Repeal and Pending Proceedings*.

. . . . .

. . . . .

---

[16] 3112.1  *Conditions for AFDC*

This section applies to the child who is in need and otherwise eligible and whose parent or both parents has died, has a physical or mental incapacity or is continually absent from the home. The parent is the natural parent, whether or not they were married to each other, or the adoptive parent.

A child in whose behalf AFDC is requested must meet the following requirements:

1. *Age:*
   He must be under 18 years of age, or
   If over age 18 but under 21 years of age, he must be a *student* regularly attending secondary school, college or university or regularly attending a vocational or technical training course designed to fit him for gainful employment.

(c) *All rules and regulations adopted prior to the time of taking effect of this Act shall continue in full force and effect;*[17]

By virtue of section 17, we are inclined to believe that PWM 3241 survived and did not become invalid as DSSH contends. However, even assuming that PWM 3241 lacks compliance with HAPA, the trial court estopped the government from asserting the invalidity of PWM 3241. We now examine this aspect of the trial court's ruling.

DSSH argues that the estoppel doctrine may not be applied to impair the powers of a sovereign state and in support thereof cites *Godbold v. Manibog*, 36 Haw. 206, 214-15 (1942), wherein this court held that the doctrine of estoppel is not applied to the extent of impairing sovereign powers of a state such as it exercises, for example in the enactment and enforcement of police measures; a state cannot be estopped by unauthorized acts or representation of its officers.

The doctrine of equitable estoppel is firmly established as part of our law as applying to individuals and their privies. *See Fred v. Pacific Indemnity Co.*, 53 Haw. 384, 494 P.2d 783 (1972); *Motonaga v. Ishimaru*, 38 Haw. 158, 163 (1948); *Silverhorn v. Pacific Mutual Life Insurance Co.*, 24 Haw. 366, 372 (1918); and *Bankruptcy of Thomas Spencer*, 6 Haw. 134 (1875) which all give roughly the same formula. *See also Kamohai v. Kahele*, 3 Haw. 530 (1874).

However, when attempting to apply estoppel against the government, some courts have taken a more restrictive view. Indeed, in the past some courts have refused to estop the government at all. *Yamada v. Natural Disaster Claims Commission*, 54 Haw. 621, 513 P.2d 1001, *reh. denied*, 55 Haw. 126, 516 P.2d 336 (1973); K. Davis, *Administrative Law* § 17.06 at p. 519 (1958); Comment, *Estoppel and Government*, 14 Gonz. L. Rev. 597 (1979). In keeping with this earlier

---

[17] Act 103, § 17(c), 1961 Haw. Sess. Laws 85, 90. This subsection was never codified. R.L.H. Table IX (Supp. 1961). (Emphasis added.)

reluctance, significant limitations have been placed on the doctrine in this context.

Of course, estoppel cannot be applied to actions for which the agency or agent of the government has no authority. Courts have taken great pains to distinguish those acts which were ultra vires from those which were irregular for some reason in their execution. *See Waller v. State Highway Dept.*, 218 Ga. 605, 129 S.E.2d 772 (1963); *State v. Zimring*, 58 Haw. 106, 566 P.2d 725 (1977); *Cities Service Oil Co. v. City of Des Plaines*, 21 Ill.2d 157, 171 N.E.2d 605 (1961); *Summer Cottagers' Ass'n v. City of Cape May*, 19 N.J. 493, 117 A.2d 585 (1955).

As the government has correctly pointed out, this court has held that estoppel may not be used in such a way as to hinder the state in the exercise of its sovereign power. *Godbold v. Manibog, supra.*

By contrast, some courts, applying broad but similarly worded standards, hold that estoppel shall be applied against a government whenever necessary to achieve justice and fair play. *See Fox v. Morton*, 505 F.2d 254 (9th Cir. 1974); *United States v. Lazy FC Ranch*, 481 F.2d 985 (9th Cir. 1973); *Lorenson v. City of Los Angeles*, 41 Cal.2d 334, 340, 260 P.2d 49 (1953); *Farrell v. County of Placer*, 23 Cal.2d 624, 627-28, 145 P.2d 570, 153 A.L.R. 323 (1944); *Sawyer v. City of San Diego*, 138 Cal. App.2d 652, 662, 292 P.2d 233, 239 (1956); *Cities Service Oil Co. v. City of Des Plaines, supra; Frank v. State Sanitary Water Bd.*, 33 Ill.App.2d 1, 178 N.E.2d 415 (1961). This test has also been adopted by this court although the appropriate fact situation had not yet presented itself. *State v. Zimring, supra,* and *Yamada v. Natural Disaster Claims Commission, supra,* also previously discussed.

Equitable estoppel is a device originating in courts of equity and as such depends on a close analysis of individual fact situations for its application. Further, courts seem to implement interest balancing in their discussion of whether manifest injustice would result. In *Yamada*, this court found that the policy of finality in administrative decisions outweighed the State's concern that individuals might receive a tax credit to which they were not entitled, 54 Haw. at 630, 513

P.2d at 1007. However, in denying a petition for rehearing, this court withdrew equitable estoppel as a ground for its decision, but we explicitly maintained the validity of the notion that a government can be estopped.

In the instant case, we hold that the doctrine of estoppel is applicable to prevent manifest injustice to the plaintiff. The fact situation is clearly necessary for its application. For 23 years, PWM 3241 has been incorporated in the Department's rules and regulations and has been relied on to grant assistance to pregnant women who would not otherwise be categorically eligible for AFDC benefits. For the government to now assert the invalidity of PWM 3241 because of noncompliance with HAPA is unconscionable when it is the government's misfeasance and nonfeasance which is responsible for the non-compliance. Government, above all, must be above reproach. Equity and fairness dictate that it should not be permitted to take advantage of its own wrong or mistake. *R. H. Stearns Co. v. United States*, 291 U.S. 54 (1934). A citizen has a right to expect the same standard of honesty, justice and fair dealing in his contact with the State or other political entity, which he is legally accorded in his dealings with other individuals. *Finch v. Matthews*, 74 Wash.2d 161, 443 P.2d 833 (1968).

DSSH argues that the estoppel doctrine should not be applied since there is no evidence in the record to show that the plaintiff justifiably relied upon representations made by the government.

The usual reliance element of equitable estoppel ought not serve as a bar in this case. Government agencies which serve a myriad of clients are reasonably expected and relied upon by those being served to comply with the law in adopting rules and regulations. Failure to do so should not benefit wayward agencies to the detriment of their constituency, and such agencies should not be permitted to seek the imprimatur of the law, resulting in manifest injustice to their clients.

Finding the applicability of the doctrine of estoppel, PWM 3241 is unequivocally clear on its face that an unborn child is entitled to a separate AFDC non-shelter payment. The recurrent practice by DSSH of finding otherwise ineligible

caretaker mothers eligible for AFDC payment reinforces plaintiff's position that an unborn child is categorically eligible for such payment.

The State attempts to distinguish between an unborn child being categorically *eligible* for AFDC grant but not being *entitled* to a separate payment under HRS § 346-55, § 346-53 and PWM 3305. The argument is without merit. We conclude that the clear and unequivocal language of PWM 3241 entitles an unborn child to a separate AFDC payment, and the government is estopped to deny the validity of PWM 3241.

### III.

The trial court has broad discretion in deciding whether to certify a class. *Berman v. New Hampshire Jockey Club, Inc.*, 292 F.Supp. 993 (D. N.H. 1968), *reversed on other grounds, sub nom, Berman v. Narragansett Racing Ass'n*, 414 F.2d 311 (1st Cir. 1969), *cert. denied*, 396 U.S. 1037 (1970); Wright and Miller, 7A Federal Practice and Procedure § 1785 at pp. 134-35 (1972). It is within the range of the trial court's discretion to consider that any final judgment rendered by the court will have a definitive impact on all similar future suits either by way of stare decisis or collateral estoppel.

We find no abuse of discretion by the trial court in denying class certification or intervention.

The judgment is affirmed.

*Dewey H. Kim, Jr. (Charleen M. Aina, Michael A. Lilly and R. Brian Tsujimura* on the briefs), Deputy Attorneys General, for defendants-appellants, cross-appellees.

*Arthur La France (Linda-Mei Leong, Stanley E. Levin and David Nakamura* on the briefs), Legal Aid Society of Hawaii, for plaintiff-appellee, cross-appellant.